**FILED**

JAN 1 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WASHINGTON

| | |
|---|---|
| LARRY YOUNG,<br><br>        Petitioner,<br><br>vs.<br><br>SECRETARY OF THE ARMY<br>Dr. FRANCIS J. HARVEY AND<br>COL. JAMES W. HARRIS<br>COMMANDANT U.S.D.B.,<br><br>        Appellant. | **PETITION FOR WRIT OF<br>HABEAS CORPUS**<br><br>CASE NUMBER 1:06CV00102<br><br>JUDGE: Richard W. Roberts<br><br>DECK TYPE: Habeas Corpus/2255<br><br>DATE STAMP: 01/19/2006 |

## PETITION FOR WRIT OF HABEAS CORPUS

**Larry Young
1300 N Warehouse Rd
Fort Leavenworth, KS
66027
Petitioner**

1

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WASHINGTON

LARRY YOUNG,                              )
                                          )
                    Petitioner,           )
                                          )    **PETITION FOR WRIT OF**
vs.                                       )    **HABEAS CORPUS**
                                          )
SECRETARY OF THE ARMY                     )
Dr. FRANCIS J. HARVEY AND                 )
COL. JAMES W. HARRIS                      )
COMMANDANT U.S.D.B.,                      )
                                          )
                    Appellant.            )
_____      )

     NOW COMES the Petitioner, Larry Young, hereby makes application to this honorable Court for a Writ of Habeas Corpus. The Petitioner is unlawfully detained and restrained of his liberty in violation of the laws and constitution of the United States of America. Petitioner has no other remedies under law to test the lawfulness of his confinement and this Court is the only means of relief by law.

## JURISDICTION

This court has jurisdiction pursuant to Title 28 U.S.C. § 2241, 2242 and 2255(a).
This is the proper venue pursuant to 28 U.S.C. § 1391(6)(2) in that this is the judicial
district and division in which a substantial part of the events occurred and at the time
events and trial the Petitioner Larry Young was a Staff Sergeant in the United States
Army who was tried by Court Martial on a Federal military reservation within the
territory jurisdiction of this Court.

## PARTIES

The Petitioner Larry Young is unlawfully restrained of his liberty and detained by
the authority of the respondent and warden Col, James W. Harris of the United States
Disciplinary Barracks, a Federal Military Prison at Fort Leavenworth, Kansas, the person
whose custody the Petitioner has been unlawfully committed in violation of the law and
constitution of the United States of America.

The Respondent is the Secretary of the Army Dr. Francis J. Harvey, and his agent
who is the Commandant and Warden Col, James W. Harris of the United States
Disciplinary Barracks, a Federal Military prison at Fort Leavenworth, Kansas the person
into whose custody the Petitioner has been placed in violation of the laws and
Constitution of the United States.

## STATEMENT OF CASE

The Petitioner Larry Young was tried before a Court Marital and Contrary to his
plea, petitioner was found guilty of willfully disobeying a lawful order (two counts) rape
(five counts) assault (two counts) and adultery (5 counts) all counts in violation of the
Uniform Code of Military Justice hereinafter known to as the UCMJ. Title 10 U.S.C. §§
890, 920, 928, and 934 convicted and ordered confined to the United States Disciplinary
Barracks at Fort Leavenworth, Kansas.  The Petitioner was represented by Military

Counsel, and civilian counsel, Mr. Cohen both counsels failed to protect and provide the Petitioner with his right to effective assistance of counsel, as required by law.

## ASSIGNMENT OF ERRORS
## AND VIOLATIONS OF CONSTITUTIONAL RIGHTS
### I.

1.  **The Court erred when it denied Mr. Cohen's, civilian counsel, motion for a continuance, thereby prejudicing the Defendant and denying him the effective assistance of counsel.**

    **Mr. Cohen was retained two (2) days prior to the trial, when the Petitioner's military lawyer advised him that he did not feel capable of conducting the trial and putting on an adequate defense. Mr. Cohen was not familiar with the details of the case, not having time to interview witnesses, review police reports, conduct an investigation or review the charge sheets. Therefore he requested a continuance to review the material and interview his client, in order to prepare for the trial. The Court denied Mr. Cohen's motion, thereby denying the Petitioner the effective assistance of counsel and due process of law.**

    **Mr. Cohen, upon the Court's denial of his motion for a continuance, requested leave of the Court to withdraw, stating that "I can't ethically represent the accused and [that] I feel under these circumstances I'm incapable of providing the kind of zealous and vigorous representation that I am required to provide."**

4

In *Cryler v. Sullivan*, 100 S.Ct. 1708, 1711 (1980), the Court held that if a Defendant's retained consul does not provide the adequate legal assistance guaranteed by the Sixth Amendment, a serious risk of injustice infects the trial itself.

Here the Petitioner's own counsel advised the Court in advance of the trial, that he could not afford the Defendant the protections required by law. Counsel was not asking for time to establish a meaningful relationship. He was asking for the time to prepare a defense, interview witnesses, review the police reports and investigate the files, to ensure effective representation and due process of law.

## II.
## PETITIONER WAS DENIED HIS 6TH AMENDMENT RIGHT TO COUNSEL, WHEN THROUGHOUT THE COURSE OF THE TRIAL, COUNSELS FAILED TO PERFORM TO THE STANDARD AS REQUIRED BY LAW.

> "Of all the rights that an accused person has the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other right he may have."
> *United States v. Cronic,* 466 U.S. 648, 654 (1984).

The mere presence of counsel is not enough to satisfy the constitutional requirements and command of the Sixth Amendment to the United States Constitution.

Petitioner was denied effective assistance of counsel when his civilian attorney, Mr. Cohen's , and his military attorney,   failed to adequately represent him throughout the trial and failed to perform as lawyers. The errors, prior to and throughout the trial, were so serious and their performance so deficient that counsels' performance prejudiced the defense and the defendant and denied him his 6th Amendment right to counsel.

Petitioner's attorneys failed to file objections to hearsay testimony, as well as testimony in general, by government witnesses, although both counsels were provided

with a list of witnesses only days prior to the trial, two of which were not interviewed. This is in violation of the Sixth Amendment to the United States Constitution. The standard of review is de novo. *United States v. Ayala,* 43 M.J. 296, 298 *1995). "By virtue of Article 27 UCMJ, 10 USC § 827, as well as the Sixth Amendment of the United States Constitution a military accused is guaranteed the effective assistance of counsel." *United States v. Scott,* 24 M.J. 186, 18708 (CMA 1987). The guarantee of effective assistance of counsel applies whether counsel is detailed by the military or selected by the Appellant. *Scott,* 24, M.J. at 188, the Test for review of claims of ineffective assistance of counsel is found in *Strickland v. Washington,* 466 US 688 (1984) "The benchmark for judging any claim of ineffectiveness undermines the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 46 US at 686. First the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" as guaranteed the defendant by the Sixth Amendment. Second the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. United States v. Wean, 45 M.J. 461 463 (1997), citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

The Supreme Court held in *Strickland v. Washington* that the trial defense counsel's role during sentencing proceedings mirrored counsel's role during the trial, that is, "to ensure that the adversarial testing process works to produce a just result under the standards governing decision." 466 U.S. at 687.

Throughout Petitioner's case, there was no testing of the adversarial process by defense counsel. Prior to trial, defense counsel failed to challenge the referral of charges against appellant, despite the fact that it completely goes against the policy stated in R.C.M. 201(d).

Article 32 (UCMJ) 10 USC § 832 provides for a complete and thorough investigation on the part of counsel and serves two very important purposes.

1.      It operates as a discovery tool, to all counsel, to establish fact and to properly advise the client of his situation.

2.      It establishes clearly the charges and protects against baseless charges, and gives counsel the first test of the truthfulness of the facts.

*United States v. Samuel,* 10 U.S.M.A. 206, 27 CMR 206, 27 CMR 280, *United States v. Chestnut,* AFCMR, 4 MJ 462 and *United States v. Cunningham* (1961) 12 USCA 402

All relevant evidence in the hands of the government is made directly available to the accused via counsel and counsel has an unlimited opportunity to cross examine witnesses, military and civilian. *See United States v. Connor* (1984), NMCMR, 19 MJ 631, *United States v. Cunningham (supra) CF, United States v. Bilbo,* (1982) NMCMR 13 MJ 706.

For reasons unknown and unclear but most likely as a result to counsel's lack of experience or his unformulated defense as a result of his inability to prepare for trial, counsels continuously attempted to obtain delays and refused to call key witnesses who has valued testimony on behalf of the defense who could have refuted the charges before the court.

Petitioner was never advised of the full scope and nature of the proceedings and that (the Article 32) phase hearing was in fact a pretrial hearing and that it was an important discovery tool, if not the most important phase of case development, that should have been used by the defense.

1.      To establish his defenses to the charges and specifications;

2.      To determine the need for expert witnesses for the Defense;

3.    To prepare for trial, specifically for the cross-examination of witnesses (experts, facts and police) and in the case of experts, to inquire as to their expertise, background and qualifications;

4.    To obtain documents and other relevant material to the defense of the charges and specifications, to develop a strategy, and for the sentencing phase of trial.

One must only infer that counsels did not have the degree of competence or were so preoccupied with other cases, that they could not take advantage of the Article 32 hearing, or just simply lacked the legal expertise to try a criminal case.

A criminal defendant has the right to be represented by counsel reasonably likely to render reasonably effective assistance. Investigation and preparation are the keys to effective representation. Counsels have a duty to investigate and interview potential witnesses and make an independent examination of the facts, circumstances, pleadings and laws involved. *Rummel v. Estelle,* 590 F.2d 103 (5th Cir. 1979). Counsels did not investigate; nor took any advantage of the Article 32 proceeding. Neither counsel interviewed witnesses prior to trial, and talked with government witnesses, only minutes prior to going to trial.

Their failure to discovery and to investigate, even if limited to the Article 32 proceeding, was the functional equivalent of having no legal representation and denying defendant his constitutional protected right to the effective assistance of counsel.

Both counsels refused to call witnesses or visit the crime scene or interview their client or his spouse during the most crucial discovery phase of the trial.    In *Hamilton v. State of Alabama,* 368 U.S. 52 (1961) and *Powell v. State of Alabama,* 287 U.S. 45, the court held "that an accused in a capital case requires the guiding hand of counsel at every step of the proceeding against him" "and that the guiding hand of counsel is needed lest the unwary concede that which only bewilderment or ignorance could justify".

Counsels' failure to represent their client at the pretrial hearing was a waiver. A waiver done without the consent of their client. The waiver was not a pretrial tactic on part of the counsels. The waiver served no useful purpose, tactical or strategic move. The waiver was unlawful in that it was without the consent of their client, or the court, and it was substantially prejudicial to the petitioner. The counsels, upon explanation, claimed that each assumed that the other one would take care of it, yet neither did, thus allowing the Petitioner to fall through the cracks, or justice system, without adequate representation.

## III.
## INEFFECTIVE ASSISTANCE OF COUNSEL.
## FAILURE TO INVESTIGATE FACTS AND CALL
## WITNESSES FOR THE DEFENSE.

Counsels were further ineffective in that they failed to adequately, consult with or call any expert witnesses, regarding the scientific evidence used against the Petitioner at trial. Defense counsels failed to call any expert witnesses to substantiate and or clarify the statement of the Government's laboratory finding. Counsels failed to establish, even the most basic, chain of custody foundation. This denied the Petitioner his 6th Amendment right to the effective assistance of counsel and prejudiced the Petitioner's case, in that exculpatory evidence was available and not presented. Counsels had a government witness who could have provided exculpatory evidence, and who would have testified that

Medical records of the victim indicated that she had contracted a sexually transmitted disease during the course of intercourse with the Petitioner, during the alleged rape that allegedly occurred time and time again, with unprotected sex. Yet the Defendant never contracted the infection. A reasonable man would say that this is not

Counsels failed to investigate the validity of expected adverse testimony. They failed to seek out an independent expert, to even review the medical and scientific condition of the victim, or the DNA or laboratory related evidence related to this case.

Petitioner's defense counsels were ineffective in their failure to adequately consult with the Petitioner regarding a potentially meritorious suppression motion which was raised. In *Kimmelman v. Morrison,* 477 U.S. 365 (1986), the court held that the failure to raise a suppression motion may constitute ineffective assistance where there is a reasonable probability such failure effected the outcome of the case.

Counsel failed to file several motions related to the case, although a motion to

### IV.
### INEFFECTIVE ASSISTANCE OF COUNSEL, THE TOTALITY OF COUNSEL'S CONDUCT WAS INEFFECTIVE AND DENIED THE PETITIONER THE EFFECTIVE ASSISTANCE OF COUNSEL AND PREJUDICED HIS DEFENSE

The applicable standard of adjudication to determine whether counsel has been ineffective is the two-step inquiry of *Strickland v. Washington,* 466 U.S. 668, 667 (1984). This standard is applicable to the military court under the doctrine of STARE DECISIS (*See United States v. Sanders,* 37 MJ 116, 118 (CMA), *cert. denied,* 510 U.S. 1010 (1993), *United States v. Scott,* 24 M.J. 186, 187 (CMA 1987).

This standard requires that the Petitioner demonstrate that his counsel was deficient and that the deficient performance prejudiced the defense so as to deprive him of a fair trial. In *United States v. Holt,* 33 M.J. 400, 411-12 (CMA 1991), defense counsel's failure to call witnesses for the accused, to register objections, or to cross-examine government witnesses at sentencing, was non-performance which constituted

11

ineffective assistance. In *United States v. Dorsey,* 30 M.J. 1156, 1160-61 (A.C.M.R. 1990), defense counsel's failure to present favorable pre-sentencing evidence and failure to respond to government's damaging character evidence was deemed to be ineffective assistance. In *United States v. Murray,* 42 M.J. 174, 178 (1995), defense counsel's failure to attack government's evidence, coupled with failure to present an affirmative defense, failure to suppress an illegal search, while admitting the act occurred was a "total breakdown of the adversarial process in this case" which required setting aside the finding and sentence and authorizing a rehearing. (*See United States v. Boone,* 47 M.J. 187.

Counsels' continued failure to advocate on behalf of their client throughout the pre-trial Art. 32 hearing, to which they totally failed to call witnesses, as well as to the court-martial trial proceeding, all of which prejudiced the Petitioner's case and denied him effective assistance of counsel.

Counsels failed to properly impeach CID Agent, Special Agent Hernandez who had interrogated Petitioner on cross-examination, when they failed to question these agents about their inconsistent Article 32 testimony and investigation. These were taken in the absence of counsel, while Petitioner was without the benefit of counsel. The inconsistency of their prior statements was of advantage to the defense and the failure of the Petitioner to sign a right waver certificate DA Form 3881. However, counsels' failure to attack the credibility of these Agents (witnesses) for prior inconsistent statements cost the defense dearly. **Counsels failed to show the Jury/panel and court, their prior inconsistent statements, to include the initial statement, made by Petitioner that the agents destroyed crucial evidence.** Counsels failed to obtain and present documentary evidence that contradicted the testimony of Special Agent Hernandez, before the court.

Both counsels failed to object to numerous evidentiary violations throughout the trial. Most significantly, the chain of custody and accountability of evidence obtained from the victim and crime scene. To wit, Nike tennis shoes that were submitted to the

12

crime lab for analysis that were never presented at trial. In fact, this evidence was exculpatory in nature, and it would have established that the victim had lied regarding the alleged events.

SSG Young was detained and interrogated from early in the evening until late at night, and had been awake for almost 36 hours. As stated by the investigators themselves; "I don't have a duty to the truth.

> I'm trying to make a case" (direct quote from Agent San Jose). Decisions of the United States Supreme Court have long made it clear that personal factors such a sickness, lack of food and sleep, and lack of medication are all relevant in determination of confession voluntariness under the "totality of circumstances" test. In *Clewis v. State of Texas*, 386 U.S. 707, 87 S.Ct. 1338 (1967), the Court noted that impairment of mental faculties by these factors must be considered:
>
> > The record inspires substantial concern as to the extent to which petitioner's faculties were impaired by inadequate sleep and food, sickness, and long subjection to police custody with little or no contact with anyone other than police. 386 U.S. at 712.
>
> *Greenwald v. Wisconsin*, 390 U.S. 519, 88 S.Ct. 1152 (1968) followed *Clewis,* holding lack of food, sleep and medication as factors to be considered under the totality of the circumstances test.

Mr. Cohens and Military Counsel failed to address the element of the offense, the issue of intent. Although there was some talk of the inconsistency of both statements and facts, the elements of the offense were never addressed. The elements are required by law. The elements must establish the pieces of the crime. In light of the

Jury/Panel's finding, that SSG Young did commit the offences the failure now becomes much more significant, as it affects the outcome of the trial and attaches prejudice.

Had Mr. Cohen and/or Maj. White discussed the absence of the physical evidence, scientific evidence and the elements of the offense, SSG Young would not have been convicted of this offense.

Counsels' conduct fell far below the standard of professional norms, and that conduct significantly prejudiced SSG Young. This conduct denied him due process and equal protection under the law, as well as the right to effective assistance of counsel.

Petitioner is a layman with no legal background or experience of any kind. He is a Solider in the United States Army, not a lawyer. Without counsel competently participating in the entire trial process, there is no assurance that Petitioner received his right to the effective assistance of counsel, as guaranteed to him per the Constitution, the Sixth Amendment, as well as the Uniform Code of Military Justice.

The record clearly raises the question of whether SSG Young was properly represented. In addition to the many issues already raised, another question arises. How could two attorneys make no trial preparation, interview of two witnesses at trial and not pursue discovery, yet be ready for trial?

Both counsels failed to communicate with their client, regarding the trail. In fact the conflict between themselves.

The performance in this case, as well as the non-performance, fell far short of the professional norms and the ABA standards, the Defense Function, Standard F-4.1 (2nd Ed. 1979). Their performances clearly denied the Petitioner his right to due process of law, equal protection under the law, as well as the right to the effective assistance of counsel and was prejudicial.

## V

## EVIDENCE PRESENTED AT TRIAL IS FACTUALLY

14

**AND LEGALLY INSUFFICIENT TO SUPPORT THE
CONVICTION INEFFECTIVE DUE TO LACK OF EVIDENCE
AND ASSISTANCE OF COUNSEL.**

This Court has a legal duty to protect the rights of the accused and to ensure that
the evidence presented at trial is both factually and legally sufficient. The test for
determining the legal sufficiency of evidence to support a conviction is whether, after
viewing the evidence in a light most favorable to the State, and in this case the
government, any rational trier of fact could have found the essential elements of the
crime, beyond a reasonable doubt. See *Jackson v. Virginia* 443 U.S. 307, 99 S.Ct. 2781,
81 Led @d 560 (1979). All evidence, all reasonable inferences drawn there from, and all
credibility determinations are considered in the light most favorable to the prosecution.
See *Glasser v. United States* 315 U.S. 60, 80,. 62 S.Ct.457, 469, 86 L.Ed. 680 (1942).

However, if the evidence "gives equal or nearly equal circumstantial support to a
theory of guilt and a theory of innocence of the crime charged, then a reasonable jury
must necessarily entertain a reasonable doubt." *Clark v. Procunier,* 755 F.2d 394, 396
(5th Cir 1995), cert denied, U.S. 113 S.Ct. 330, 121 L.Ed 2D 3156 (1992). Because the
evidence is as least as consistent with innocence as it is with guilt, a reasonable doubt
necessarily existed in the case at hand. This reasonable doubt, when combined with the
failure of the counsels to raise the issue to show the jury panel that at the least the
evidence in this case was equally consistent with both the defense and the prosecution
theories, goes to the issue of factual sufficiency. This consistency is incorporated and
should become part of the factual sufficiency. The Government's case, while arguably
barely sufficient, when viewed in a vacuum, cannot stand when measured against the
inconsistent evidence and the failure of defense counsels to exercise due diligence. As a
direct result of the defense counsels' failure to exercise due diligence and counsels'
deficient performance that violated the Petitioner's Sixth amendment right to counsel,

15

thereby depriving him of a fair trial, the results of the present trial must be viewed as unreliable.

The facts at trial did not prove any offense factually and legally insufficient, in that the basic-most elements of the crime were never established.

1)    That the accused did a certain overt act.

2)    That the act was done with specific intent to commit a certain offense under the law.

3)    That the act amounted to more than mere preparation; and

4)    That the act apparently tended to effect the commission of the intended offense.

Here is where the critical element in fact and issue is whether or not the Government proved the second prong of the legal requirement, an attempt, and that SSG Young maintained the requisite "specific intent" in order to find him guilty of the rape.

The military judge then focused on defining "specific intent", and instructed the panel that "it must be proved beyond a reasonable doubt that at the time of the act, the accused intended every element of carnal knowledge". (R. At 650; See legal services: Military Judges' bench book, Department of the Army Pamphlet 27-9, 30 Sept. 1996). The military judge then focused the panel members to "be satisfied" to find SSG Young guilty "beyond a reasonable doubt, Most significantly, that the government failed to prove that SSG Young intended to commit an offense or an act of sexual intercourse with the victim.

The evidence at the trial points to one conclusion, that SSG Young is not guilty

## VI.

**THE ARMY COURT OF CRIMINAL APPEAL ERRED IN
AFFIRMING PETITIONER'S CONVICTION AND SENTENCE
WHERE THE RECORD OF TRIAL WAS INCOMPLETE,
INACCURATE, UNTRUE AND NONVERBATIM DENYING
PETITIONER DUE PROCESS.**

In a case subject to review under Article 66, UCMJ, 10 U.S.C. 866 (1999), the

record of trial must be properly prepared and transmitted to the Judge Advocate General

for action. Article 65, UCMJ, 10 U.S.C. 865 (1999). A complete and verbatim record is

a jurisdictional prerequisite, which cannot be waived and without such a record the court

cannot adequately access the events at trial. *See United States v. Seal,* 38 M.J. 659, 662

(A.C.M.R. 1993); *see also United States v. Kelsey,* 14 M.J. 545 (A.C.M.R. 1982); *United

States v. Whitney,* 23 U.S.C.M.A. 48, 48 C.M.R. 519 (1974); *United States v. Vasquez,* 44

M.J. 52 (C.A.A.F. summary disposition Feb. 23, 1996). Because this was a general

court-martial wherein a dishonorable discharge was adjudged, a verbatim transcript of the

proceedings was required. Article 54 (a), UCMJ, 10 U.S.C. 854(a)(199); R.C.M. 1103

(b). The military judge authenticated the record, and it was received at the Office of the

Judge Advocate General. After authentication, a military judge must provide all parties

an opportunity to be heard on any substantive changes to the record. *See United States v.

Anderson,* 12 M.J. 195, 197 (C.M.A. 1982).

In this case, the military judge improperly authenticated an incomplete, inaccurate

and untrue record, which pursuant to R.C.M. 1103, 1104 and 10 U.S.C. 836 and 854

was forwarded and reviewed by trial counsel, trial defense counsel, the staff judge

advocate, then forwarded to the Office of the Judge Advocate General, and then delivered

to the clerk of court. The opportunities existed for these errors, if detected in a timely

manner, to be corrected through a post-trial 39(a) session under R.C.M. 1102. *See also

United States v. Kyle,* 32 M.J. 724, 726 n. 4 (A.F.C.M.R. 1991) ("trial counsel is the

17

guardian of the record, with a statutory duty to 'prepare the record of the proceedings.)

(Citations omitted). Accordingly, the discrepancies noted in the record included missing

documents, numerous incomplete sentences, dots and dashes representing inaudible

translation from tape. These errors leave the reader unable to clearly understand the

events at trial or to determine if the Petitioner received a fair trial. The errors are

sufficiently prejudicial to mandate reversal.

WHEREFORE, Petitioner respectfully requests this Honorable Court rule

Petitioner's Court-Martial void and grant Petitioner's Writ of Habeas.

## VII.

### THE ARMY COURT OF CRIMINAL APPEALS LACKED JURISDICTION TO REVIEW PETITIONER'S APPEAL WHEN JURISDICTION WAS LOST DUE TO A INCOMPLETE RECORD OF TRIAL.

In order for the Court to exercise jurisdiction in this case it must meet the

statutory requirements as follows:.

> In a case subject to review under Article 66, UCMJ, 10 U.S.C. § 866 (1999), the record of trial must be properly prepared and transmitted to the Judge Advocate General for action. Article 65, UCMJ, 10 U.S.C. § 865 (1999). A complete and verbatim record is a jurisdictional prerequisite, which cannot be waived. See *United States v. Seal*, 38 M.J. 659, 662 (A.C.M.R. 1993); see also *United States v. Kelsey*, 14 M.J. 545 (A.C.M.R. 1982); *United States v. Whitney*, 23 U.S.C.M.A. 48, 48 C.M.R. 519 (1974); *United States v. Vasquez*, 44 M.J. 52 (C.A.A.F. summary disposition Feb. 23, 1996). Because this was a general court-martial wherein a dishonorable discharge was adjudged, a verbatim transcript of the proceedings was required. Article 54(a), UCMJ, 10 U.S.C. § 854(a) (1999); R.C.M. 1103(b).

The requirement for a complete and "substantially verbatim record" is a

"jurisdictional prerequisite". This prerequisite cannot be waived. A substantial omission

renders a record incomplete. *United States v. McCullah,* 11 MJ 234, 236 (CMA 1981).
If the record is not complete then the facts that it discloses are also inaccurate and
incomplete which prevented the court from granting a complete and fair appellate review.
A substantial omission in a record of trial raises a presumption of prejudice to the
accused. RCM 1163(b)(2), *McCullah,* 11 MJ at 237, *Cudini* 36 MJ at 537. The record of
trial was substantially incomplete. Whereby plaintiff respectfully requests this court
grant his petition for a writ of habeas corpus.

## VIII.
### TRIAL BY COURT-MARTIAL WAS PREJUDICIAL TO THE PETITIONER BY THE GOVERNMENT'S FAILURE TO COMPLY WITH 10 U.S.C.A. § 937. THIS CONDUCT DENIED THE DEFENDANT/PETITIONER HIS CONSTITUTIONAL RIGHTS UNDER ARTICLE III § 2, OF THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Petitioner was never informed, upon enlistment or sub-sequent re-enlistments into
the U.S. Army, of the provisions of the U.C.M.J. as required by 10 U.S.C. § 937.
Further, Petitioner never waived his constitutional rights guaranteed all citizens under
Article III, the Fifth and Sixth Amendments of the United States Constitution. Yet,
Petitioner was convicted by a system of justice contrary to their provisions, and in
violation of the law. That failed to protect his due process rights.

"Where does a court obtain jurisdiction to perform a single official function?
How does it obtain subject-matter jurisdiction or personal jurisdiction over the person of
any individual? The particular tribunal is a mere creature of statute, as we have said, and
must be created under its provisions..." *McClaughry v. Deming,* 186 U.S. 49, 64 (1901),
cf. *Norton v. Shelby County,* 118 U.S. 425, 441. "The attempt at the creation of a court

19

failed because such attempt was a plain violation of the statute." *Id.* "Where the statutory conditions as to the constitution or jurisdiction of the court are not observed, there is no tribunal authorized by law to render judgement." *Id. At 65,* cf. *Keyes v. United States,* 109 U.S. 336. "The fundamental difficulty lies in the fact that the court was constituted in direct violation of the statute, and no consent could confer jurisdiction over the person of the defendant/Petitioner or over the subject matter of the accusation, because to take such jurisdiction would constitute a plain violation of the law". *Id. At 66.* "The law governing courts-martial is found in the statutory enactments of congress, particularly the Articles of War; in the Army Regulations; and in the customary military law". *Carter v. McClaughry,* 188 U.S. 380, 386 (1901). "Statutory language is construed to conform as near as may be to traditional guarantees that protect the right of the citizen". *Lee v. Madigan,* 358 U.S. 228, 235 (1958). "The trial of any person before a courts-martial encompasses a deliberate decision to withhold procedural protections guaranteed by the Constitution. Denial of these protections is a very serious matter." *Solorio v. United States,* 483 U.S. 435, 467 (1986), Marshall, J., dissenting. "Admittedly we must be concerned not only with factual accuracy of a trial result but also with the procedure employed in obtaining it." *United States v. Thomas,* 22 MJ 388, 395 (CMA 1986), cf. *Rogers v. Richmond,* 365 U.S. 534 (1961).

The procedure of establishing jurisdiction over a service member begins with his willingness to subject himself to such a system that is without the protections offered by our Constitution. If a service member is not made aware of the military's system of justice, its procedures and acts punishable, how can it be said that the service member waived his constitutional rights and willingly subjected himself to such a system? Petitioner asserts that it cannot, nor did he.

"It is no crime to be a soldier." *Ex parte Quirin,* 317 U.S. 1, 30-31. "It has been held that this (Article I, § 8, C1. 14) creates an exception to the normal method of trial in civilian courts as permitted by the Constitution and permits Congress to authorize

military trial of members of the armed services without all the safeguards given an accused by Article III, and the Bill of Rights." *Reed v. Covert,* 354 U.S. 1, 19 (1956), citing; *Dynes v. Hoover,* 20 How. 65. "Military trial does not give an accused the same protection which exists in civilian courts. Looming far above all other deficiencies of the military trial of course, is the absence of trial by jury before an independent judge after an indictment by a grand jury…" *Id. At 37,* opinion of, Black, J.

Petitioner asserts that he did not waive his constitutional rights and willingly submit himself to a system of justice that is not provided for, under the circumstances of the Petitioner's case, within our Constitution.

"Article 137 of the Uniform Code, 10 U.S.C. § 937, requires that the provisions of the code be 'carefully explained to each enlisted member at the time of his entrance on active duty, or within six days thereafter' and that they be 'explained again after he has completed six months of active duty…' Thus…enlisted personnel…are required by its terms to receive instructions in its provisions." *Parker v. Levy,* 417 U.S. 733, 751-52 (1973). "Military jurisdiction typically derives from consent, in that it usually depends on the existence of a status which is created by consent. In today's all-volunteer force, every service member is an enlistee who is subject to military jurisdiction only because he has voluntarily entered an enlistment contract which created a military status." *United States v. Caputo,* 18 MJ 259 (CMA 1984), citing; *In re Grimely,* 137 U.S. 147 (1890).

## IX.

**PETITIONER'S COURT-MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE HAD NOT BEEN DULLY APPOINTED IN ACCORDANCE WITH THE APPOINTMENT CLAUSE OF ARTICLE II § 2 OF THE UNITED STATES CONSTITUTION AND IN VIOLATION OF ARTICLE III OF THE UNITED STATES CONSTITUTION.**

A military judge is not a fully empowered judicial officer. His authority comes only when a Court martial is convened, in a sense like a part-time job. In order for a military judge to have authority, the military judge must be nominated by the President and confirmed by the Senate or a military judge or meet the constitutional requirements of Article III of the United States Constitution..

> **Appointment** of Officers of the United States
> Article II, Sec. 2, para. 2, clause 2 of the Constitution—the
> Appointments Clause—provides that the President shall
> nominate, and by and with the Advice and Consent of the
> Senate, shall appoint Ambassadors, other public Ministers
> and Consuls, Judges of the supreme Court, and all other
> Officers of the United States, whose Appointments are not
> herein otherwise provided for, and which shall be established
> by Law; but the Congress may by Law, vest the Appointment
> of such inferior Officers, as they think proper, in the President
> alone, in the Courts of Law, or in the Heads of Departments.

The purpose of the Appointment Clause is two-fold. (1) It is meant to protect the prerogative of the President from congressional encroachment on his power to appoint his subordinates. (2) It is also meant to meet the Article III Standard that assures judicial independence, and life (tenure) guaranteed salary. Military judges' under Article 26, and 66 of the U.C.M.J. is in violation of the United States Constitution because they vest the appointment power in the Judge Advocate General, rather than the President which is direct violation of Art. II Sec. 2 Close 2 and Art. III of the United States Constitution, the Court established by law or the statutory department heald.

These issues were addressed in *Buckley v. Valeo*, 424 US 1, 96 Sct 612, 46 LED 2d 659 (1976). The Supreme Court held that the plenary power of Congress over the federal election practices did not exempt members of the Federal Election Commission from the Appointments Clause. Thereby, the military also must comply with our Constitution and its Judges are not exempt..

The Court went on to say, *at Id* at 132, 96 S.Ct. At 688;
"Thus, we are compelled to conclude that, while Congress

22

> may determine how the military justice system will operate,
> it may not exempt those who will operate it from the
> Appointments Clause. Accordingly, we hold that the
> Appointments Clause is applicable to the military justice system.

Thereby, the Petitioner's Court martial was in violation of Article III of the United States Constitution and without jurisdiction.

WHEREFORE, the Petitioner requests this Court grant Petitioner's petition for a Writ of Habeas Corpus and reverse the findings of the military court.

## X.
## PETITIONER'S TRIAL BY COURT-MARTIAL WAS NOT A FAR AND IMPARTIAL TRIAL AS EQUIRED BY THE UNITED STATES CONSTITUTION.

"There is no right more sacred to our institutions of government than the right to public trial by a fair and impartial jury; no wrong more grievous than its denial and no greater duty is enjoined upon the courts than to preserve that right untarnished and undefiled. The denial of a fair and impartial trial, as guaranteed by the Sixth Amendment to the Constitution, is also a denial of due process, demanded by the Fifth and Fourteen Amendments, and the failure to strictly observe these constitutional safeguards renders a trial and conviction for a criminal offense illegal and void..." *Baker v. Hudspeth,* 129 F.2d 779,781 (1942) "...It is the design of the law to maintain the purity and impartiality of the courts, and to insure for their decisions the respect and confidence of the community. Their judgments become precedents which control the determination of subsequent cases; and it is important, in that respect, that their decisions should be free from all bias. After securing wisdom and impartiality in their judgments, it is of great importance that the court should be free from reproach or the suspicion of unfairness. The party may be interested in only that his peculiar suit should be justly determined; but the state, the community, is concerned not only for that, but the judiciary shall enjoy an elevated rank in the estimation of mankind." *McClaughry v. Deming,* 186 U.S. 49, 67

(1901) citing *Oakly v. Aspinwall, 3 N.Y. 547.* "Congress of course, is subject to the requirements of the Due Process Clause when legislating in the area of military affairs, and that clause provides some measure of protection to defendants in military proceedings." *Weiss v. United States,* 114 S.Ct. 752, 760 (1994). "It is elementary that 'a fair trial in a fair tribunal is a basic requirement of due process'". *Weiss, supra* at 761, citing, *In re Murchison,* 349 U.S. 133, 136 (1955).

The seventh U.N. Congress on the prevention of crime and treatment of offenders adopted by consensus Basic Principals on the Independence of Judiciary, which was endorsed by the U.N. General Assembly (A/RES/40 32, 29 Nov. 1985). One of thee basic principals was: "Whereas the Universal Declaration of Human Rights enshrines in particular the principals of equality before the law, of the presumption of innocence and of the right to a fair and public hearing by a competent, independent, and impartial tribunal established by law."

In 1992, the Supreme Court of Canada, in *Genereux v. Her Majesty the Queen,* dealt with the issue of whether a General Courts-Martial is an independent and impartial tribunal. As it is Petitioner's understanding that Canada's General Courts-Martial procedures at the time were similar to ours today, and in acknowledging that their decision is in no way binding on the United States, or this court, still believes it to be worth mentioning that the question was whether a reasonable person, familiar with the Constitution and the structure of the General Courts-Martial, would perceive that tribunal as independent. Key considerations were that: (1) the judge did not enjoy sufficient security of tenure, the JAG is part of the executive and the judge was appointed on a case by case basis, (2) the judge and members did not enjoy sufficient financial security, (3) certain characteristics cast doubt on the institutional independence of the tribunal in the mind of a reasonable and informed person; in particular that the authority that convenes the courts-martial, i.e. the executive, who is responsible for appointing the prosecutor, also appoints the members, and the judge. The court determined that this structure

24

incorporated features which were not necessary to attain military discipline or military justice. "Under normal circumstances, it is not necessary to try alleged military offenders before a tribunal in which the judge, the prosecutor, and triers of fact are all chosen by the Executive."

More recently the European Court of Human Rights heard the case; *Findlay v. United Kingdom*, where the Applicant complained that the Courts-Martial was not an independent and impartial hearing because of the fact that all the officers appointed to it were directly subordinate to the Convening Authority. The court noted that in order to establish a tribunal's independence the manner of appointment of its members, their term of office, the guarantees of outside pressure, and the question of whether the body presents an appearance of independence, must be considered. As to the question of impartiality; the tribunal must be subjectively free of personal prejudice or bias, and it must be impartial from an objective viewpoint, that is, it must offer sufficient guarantees to exclude any legitimate role played by the Convening Authority in the organization of the Courts-Martial. The court considered the applicant's claims objectively justifiable.

Petitioner, in the present case, brings these international cases to the court's attention because he alleges the same, and more, shortcomings in the system by which he was tried and, for this reason, believes that they are, at a minimum, worthy of consideration.

Petitioner asserts that he was not tried by an independent and impartial tribunal, and that this can be obviated by considering the following factors in addition to those addressed above: The commander who refers charges to a courts-martial believes the accused to be guilty,, all panel members are aware of this, as they are aware that the CA is privy to information that they may not be; the panel members and prosecutor are subordinate to the CA; all members of the Courts-Martial, including the defense counsel, are employed by the Executive. These factors alone establish command influence, just by the nature of the military hierarchy. And this is a key factor in changing the

25

governments burden of 'proof of guilt beyond a reasonable doubt' to the defenses burden

of 'proving innocence beyond a reasonable doubt'. Although Petitioner was told by a Lt.

Col. That in courts-martial, one is considered guilty until proven innocent, Petitioner did

not believe this...until his conviction. Ironically this same Lt. Col. Was on Petitioner's

original convening order.

"Courts-Martial are ad-hoc bodies appointed by a military officer from among his

subordinates. They have always been subject to varying degrees of 'command

influence'. In essence, these tribunals are simply executive tribunals whose personnel are

in the executive chain-of-command. Frequently, the members of the courts-martial must

look to the appointing officer for promotions, advantageous assignments, and efficiency

ratings — in short — for their future progress in the service. Conceding to military

personnel that high degree of honesty and sense of justice which nearly all of them

undoubtedly have, the members of a court-martial, in the nature of things, do not and

cannot have the independence of jurors drawn from the general public or of civilian

judges." *Reid v. Covert*, 354 U.S. 1, 36 (1956). "The presiding officer at a court-martial

is not a judge whose objectivity and independence are protected by tenure and

undiminishable salary, and nurtured by the judicial tradition, but is a military law officer.

Substantially, different rules of evidence and procedure apply in military trials. Apart

from those differences, the suggestion of the possibility of influence on the actions of the

court-martial by the officer who convenes it, selects its members and the counsel on both

sides, and who usually has direct command authority over its members is a pervasive one

in military law, despite strenuous efforts to eliminate the danger." *O'Callahan v. Parker*,

395 U.S. 258, 264 (1968). Also, "the access of the defense to compulsory process for

obtaining evidence and witnesses is, to a significant extent, dependent on the approval of

the prosecution." *Id.* At n. 4. "Command influence involves a corruption of the truth-

seeking function of the trial process. Consequently, in cases where unlawful command

influence has been exercised, no reviewing court may properly affirm findings and

sentence unless it is persuaded beyond a reasonable doubt that the findings and sentence have not been affected by the command influence." *United States v. Thomas,* 22 MJ 388, 394 (CMA 1986).

Another, often overlooked, role of the Courts-Martial is 'defender of the military's image'. This is as inherent in the panels decision-making process as is command influence. All of the accused's superiors on the panel are career service members, as loyal to their branch of service as they are to the United States. These panel members are faced with the fact that the accused, just by being charged with an offense punishable by Courts-Martial has already tarnished the military's image. This fact, combined with the 'what-ifs': What if he is guilty; and what if he re-offends? Both come into play in the decision-making process. The impact that an accused being acquitted and then re-offending would have on their careers, the military's image, and the devastating effect it would have upon the military justice system, all contribute to the accused having to prove his 'innocence beyond a reasonable doubt'.

The United States has a vital interest in creating and maintaining an armed force of honest, upright, and well-disciplined persons, and in preserving the reputation, morale, and integrity of the military service." *O'Callahan,* Supra. At 281. "Finally, and of vital importance, the adverse public perception of military justice which results from cases like these undercuts the continuing effects of many — both in and out of the Armed Services — to demonstrate that military justice is fair and compares favorably in that respect to its civilian counterparts." *Thomas,* Supra. At 400.

There is also the factor of enlisted obedience to be considered. All members of the courts-martial are not only appointed by the executive, but are also superior in rank to the accused, this is to include trial defense counsel. The accused has been trained not to question their decisions and to follow their orders. This fact renders the accused's participation in his defense, symbolic, and places the burden on the officers of the court to set aside their loyalties to their superiors and branch of service to ensure that the

27

accused receives a fair and impartial hearing. Petitioner asserts that by the very nature of the military this is too much to ask of these officers and as much as we would like to credit them with this ability, we can never be certain. The fact remains that they are all officers of the executive and the Petitioner is bound to follow their orders without question.

"An army is not a deliberative body. It is the executive arm. Its law is that of obedience. No question can be left open as to the right to command in the officer, or the duty of obedience in the soldier." *Parker v. Levy,* 417 U.S. 503, 507 (1986).

Petitioner acknowledges that attempts have been made to mirror the military justice system after that of its civilian counter part. Petitioner does not understand why, since these courts are not only open to hear allegations against service members, but are the proper forum for them to be heard, and the rules that have established are not adhered to. Petitioner further questions this attempt at duplication, in that, for the reasons stated above, it can never be achieved.

## XII.

### PETITIONER'S COURT-MARTIAL LACKED JURISDICTION BECAUSE THE CONVENING AUTHORITY, MILITARY TRIAL JUDGE, JUDGE ADVOCATE GENERAL, AND THE JUDGES OF THE ARMY COURT OF CRIMINAL APPEALS (ACCA) HAD NOT BEEN APPOINTED IN ACCORDANCE WITH THE APPOINTMENTS CLAUSE OF ARTICLE II OF THE UNITED STATES CONSTITUTION. PETITIONER WAS TRIED AND CONVICTED BY A GENERAL COURT-MARTIAL WITHOUT AUTHORITY OR JURISDICTION.

The Convening Authority, Military Trial Judge, Judge Advocate General, and the ACCA judges are principal officers. Certainly, the Judge Advocate General and the ACCA judges are. Although this is a key issue that needs to be resolved, even if they are

all called inferior officers, their appointment is in violation of the provisions of Article II, section 2, 2, of the Constitution for the appointment of interior officers.

"The Military Judge, a position that has officially existed only since the passage of the Military Justice Act of 1968, acts as presiding officer at a Special or General Court-Martial. (Article 26, UCMJ 10 U.S.C. 826). The judge rules on all legal questions and instructs court-martial members regarding the law and procedures to be followed. (Article 51, UCMJ. U.S.C. 851)". *Weiss v. United States,* 114 S.Ct. 752, 756 (1994). "At the next tier are the four courts of military review... These courts, which usually sit in three-judge panels, review all cases in which the sentence imposed exceeds one year of confinement, involves the dismissal of a commissioned officer, or involves the punitive discharge of an enlisted service-member. (Article 66, UCMJ, 10 U.S.C. 866). The courts may review *de novo* both factual and legal findings, and may overturn convictions and sentences." *Id.* Atop this legal system is the United States Court of Appeals for the Armed Forces. The appointment of the judges of this court is not in question.

"Neither Military Trial Judges nor Appellate Judges, moreover, have a fixed term of office. Commissioned officers are assigned or detailed to the position of Military Judge by a Judge Advocate General for a period of time he deems necessary or appropriate, and then they may be reassigned to perform other duties." *Id.* At 760. Article 26 places the military judge under the authority of the Judge Advocate General. (10 U.S.C. 826). "...Although they allowed an alternative appointment method for interior officers, the Framers still structured the alternative to ensure accountability and check governmental power: any decision to dispense with presidential appointment, and Senate confirmation is Congress' to make, not the President's, but Congress' authority is limited to assigning the appointing power to the highly accountable President or the heads of federal departments, or, where appropriate, to the courts of law." *Weiss v. United States,* 114 S.Ct. 752, 765 (1994).

Petitioner contends that since the officers in question are not appointed specifically by those specifically empowered to do so, their appointments are invalid. "In *Frevtag v. Commissioner,* [citation omitted], we observed that in the Appointments Clause the Framers limited the 'diffusion' of the appointment power in order to 'ensure that those who wielded it were accountable to political force and the will of the people'... And if Congress, with the President's approval, authorizes a lower-level Executive Branch official to appoint a principal officer, it again has adopted a more diffused and less accountable mode of appointment than the Constitution requires: this time it has violated the bar on abdication." *Id.* At 766, n. 3. "'Germaneness' is relevant whenever Congress gives power to confer new duties to anyone other than the few potential recipients of the appointment power specified in the Appointment Clause... The Judge Advocate Generals are none of these. Therefore, if acting as a Military Judge under the Military Justice Act is non-germane to serving as a military officer, giving the Judge Advocate General the power to appoint military officers to serve as military judges would violate the Appointments Clause." *Weiss,* supra. At 770, Ginsburg, J. concurring.

Petitioner, granted, a layman, does not perceive how anyone other than those specifically provided for in the Appointments Clause could appoint an inferior officer when the language of the clause is so clear. Even if this role has been amended through interpretation, Petitioner contends that the additional requirements of 10 U.S.C. 826(b) and 866 obviate that the office of Military Judge is not germane to that of military officer. Petitioner asserts that the position of a military officer is as germane to that of a Military Judge as it is to any other principal/inferior officer, and questions whether or not these offices could also be filled by military officers and, if so, at whose discretion and when.

Any debate on the appointment of military judges would not be complete without touching on their removal, and to do so one must consider 10 U.S.C. 837, which could be interpreted to mean--and Petitioner contends that it does--that the censure, reprimand, or admonishment cannot be based on the judge's conduct during a trial. In other words,

30

another reason need be given for decertification or transfer. Further, to interpret 837 in its plain meaning would indicate that the military judges cannot be subject to suspension or removal for reasons of incapacity or behavior that renders them unfit to discharge their duties. Surely, this is not the case.

"Under the Appointments Clause, the President 'shall nominate, and by and with the Advice and Consent of the Senate, shall appoint' all 'Officers of the United States' or principal officers, as we have called them, [citations omitted] 'but the Congress may by law vest the Appointment of such inferior officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.'" *Weiss,* supra. At 763, Souter, J., concurring. One of the questions posed by the Petitioner is as Justice Souter stated: "...whether a multi-person office may be created in which individuals will occupy, again at the choice of a lower-level Executive Branch official, either inferior-officer or principal-officer positions." *Id.,* see also *Weiss,* supra. At 770, Ginsburg, J., concurring. *Note: "The argument that military judges are principal officers is far from frivolous" *Id.* at 768. "The line between 'inferior' and 'principal' officer is one that is far from clear." *Id.* At 769. Cf. *Morrison,* 487 U.S. at 671.

Petitioner contends that his court-martial lacked jurisdiction due to that fact that all officers involved, acting in their judicial capacity, were not appointed within the provisions of the Appointments Clause. A final consideration would be the impact on our system of government in allowing any officer, once appointed, to fill any position at the direction of a low-level officer.

31

## XII.

**THE COURT MARTIAL LACKED JURISDICTION DUE
TO UNLAWFUL DELEGATION OF AUTHORITY. THE
LEGISLATIVE GRANT OF AUTHORITY IN CHAPTER 47,
10 U.S.C. (U.C.M.J.) TO THE EXECUTIVE TO MAKE
RULES AND PROCEDURES, AND TO ENFORCE THEM
BY COURTS-MARTIAL IS IN VIOLATION OF THE
SEPARATION OF POWERS. PETITIONER WAS TRIED
AT A COURT-MARTIAL BY THE EXECUTIVE BRANCH
EXERCISING LEGISLATIVE AND JUDICIAL AUTHORITY.**

The current military justice system is similar to the consular powers, where "such a blending of executive, legislative, and judicial powers in one person or even in one branch of the government is ordinarily regarded as the very acme of absolutism". *Reid v. Covert,* 354 U.S. 1, 11 (1956). "It has not yet been definitely established to what extent the President, as Commander-in-Chief of the Armed Forces, or his delegates, can promulgate, supplement or change substantive military law as well as the procedures of military courts in time of peace, or in time of war...If the President can provide rules of substantial law as well as procedure, then he and his military subordinates exercise legislative, executive and judicial powers with respect to those subject to military trials. Such blending of functions in one branch of the Government is unconstitutional and the draftsmen of the Constitution endeavored to prevent by providing for the separation of governmental powers." *Id,* at 39. "Ours is a government of divided authority on the assumption that in division there is not only strength but freedom from tyranny..." *Id,* at 40. The quote of Lord Coke, in *Reid, supra,* echoes loudly today: "God send me never to live under the law of Conveniency or Discretion. Shall the Soldier and Justice sit on one bench, the Trumpet will not let the Crier speak in Westminster-Hall." "...Inherent in the separation of powers was the idea that 'the acts of each shall never be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other

32

departments." *Palmore v. United States,* 411 U.S. 389, 416 (1972), citing *O'Donoghue v. United States,* 289, U.S. 516 at 530.

Petitioner contends that trial by courts-martial encroaches on both the civil courts and appellants rights as provided by the Constitution. The powers exercised by the Executive in courts-martial are clearly judicial powers. As it is equally clear that the President's authority to establish rules and procedures are legislative powers. Petitioner further asserts; that which started as a slight encroachment in 1916, although at times rebuffed, has usurped not only the service members rights, but also, the powers of the Legislative and Judicial Branches, but also denies service members due process and equal protection under the law as guaranteed in the United States Constitution.

"The rights and liberties which citizens of our country enjoy are not protected by custom and tradition alone, they have been jealously preserved from encroachments of Government by express provisions of our written Constitution." *Reid, Supra,* at 6-7, cf. *Barron v. Baltimore,* 7 Pet. 243, 250. "Every extension of military jurisdiction is an encroachment on the jurisdiction of the civil courts, and, more important, acts as a deprivation of the right to jury trial and other treasured Constitutional protections." *Id,* at 21. "Slight encroachments create new boundaries from which legions of power can seek new territory to capture, 'it may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provision for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of the courts to be watchful for the constitutional rights of the citizens, and against any stealthy encroachments thereon.'" *Id,* at 39-40, citing in part, *Boyd v. United States,* 116, U.S. 616, 635. If our Constitution is to have meaning then it <u>must</u> protect the rights of its

citizens. And, even more so the right of its citizen soldiers, airmen, sailors, and marines; the citizens who are sworn, committed, and duty bound to fight and die for their country, their constitution, and our way of life.

"The Court of Military Appeals has indicated its belief that Congress did not and could not empower the President to promulgate substantive rules of law for the military. [Citations omitted.] The question as to whether the Executive has such an inherent power was apparently left open by this Court in *Reid v. Covert*, 354 U.S. 1, 38, and it is not necessary to resolve it in this case." *Parker v. Levy*, 417 U.S. 733, 785, n. 36. Stewart, J. dissenting. Petitioner contends that his direct challenge to this power in the present case requires that the issue now be resolved. "Congress and not the Executive was given the authority to make rules for the regulation of the Armed Forces." *Solorio v. United States*, 483 U.S. 435, 446 (1986). "The potential for encroachment upon powers reserved to the Judicial Branch through the device of specialized legislative courts is dramatically evidenced in the jurisdiction granted to the courts created by the [Bankruptcy] Act before us." *Northen Pipeline Co. V. Marathon Pipe Line Co.*, 458 U.S. 50, 74. Petitioner asserts that the potential for encroachment is even more prevalent within the U.C.M.J. "The constitutional system of checks and balances is designed to guard against 'encroachment and aggrandizement' by Congress at the expense of the other branches of government." *Id*, at 83, cf. *Buckley v. Valeo*, 424 U.S. at 122.

Petitioner has realized the fears of our founders, and their need for the separation of powers. This is obviated by a review of Petitioner's court-martial where all authority was exercised by the Executive Branch. There can be no question that this is in violation of our Constitution.

## THE GOVERNMENT FAILED TO PROVE THAT A RAPE OCCURED AS DEFIND UNDER MILITARY LAW.

The crime of rape must meet the test of legal sufficiency. The Sufficiency's of the crime are its elements. Each and every element must be proven beyond a reasonable doubt through out the trial:

1.  The accused committed the act of sexual intercourse with the victim.

2.  That the act was preformed without the consent of the accused.

Consent and force are necessary and mandatory elements to the crime of rape. The government failed to show that the victim was raped. The victim was not beaten, the victim was not threatened with physical harm, and the victim was not subdued by psychological force or fear of rape. The rape was said to have occurred because the victim was incapable of resisting or that the victim consented. When the government failed to establish the elements of the crime, the government's case became no more then a story. The victim said the rapes occurred when she was between 16 and 20 years of age. She lived outside the home on and of during this time, had a full time job, a boyfriend, a drivers license, and access to a car to leave. Yet the claim is the victim stayed home and endured rape after rape after rape and came back home time and time again. During trial the victim stated she was sexually active and during the time the rapes occurred she knew she had two sexually transmitted diseases yet the petitioner who was allegedly had rape the victim never caught the disease when it was alleged that he had unprotected sex with the victim on countless occasions. In addition the defendant who at the time was married was having marital sexual relation with his wife who never contracted the diseases.

35

WHEREFORE, Petitioner respectfully requests this honorable court his petition for a Writ of Habeas Corpus be granted and his court-martial be declared void and the. unconstitutional.

Respectfully submitted

Larry Young